GORLICK, KRAVITZ & LISTHAUS, P.C.
Barbara S. Mehlsack, Esq. (BM 1390)
17 State Street, 4th Floor
New York, New York 10004
(212) 269-2500
bmehlsack@gkllaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
VINCENT R. MASINO AS TRUSTEE OF
ASPHALT WORKERS LOCAL 1018 OF THE
LABORERS INTERNATIONAL UNION OF NORTH
AMERICA and ASPHALT WORKERS LOCAL 1018
OF THE LABORERS INTERNATIONAL UNION OF
NORTH AMERICA

                              Plaintiffs,

           - against -

LUCIANO FALZONE as Trustee of the LOCAL
UNION 1018 DEATH BENEFIT TRUST FUND,
LOCAL UNION 1018 DEATH BENEFIT TRUST FUND,
and LUCIANO FALZONE, ROBERT MARESCO, JOHN
MORELLO, ALFONSO LETO, CALOGERO
FALZONE, ROLAND BEDWELL, CONSTANTINO
SEMINATORE in their individual and official capacities

                              Defendants.
-----------------------------------------------------------------X

CV 05 2668

05 Civ.

COMPLAINT

KORMAN, CH

LEVY, M.J.

Plaintiffs, VINCENT R. MASINO as TRUSTEE OF ASPHALT WORKERS UNION, LOCAL 1018, LABORERS INTERNATIONAL UNION OF NORTH AMERICA (hereinafter referred to as "the Local 1018 Trustee" or "Union Trustee") and LOCAL 1018, LABORERS INTERNATIONAL UNION OF NORTH AMERICA (hereinafter referred to as "Local 1018") (sometimes collectively referred to as "Plaintiffs"), by and through their attorneys, GORLICK, KRAVITZ & LISTHAUS, P.C., as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1. This is a civil action brought pursuant to 29 U.S.C. §§ 185, 462, 464, 501, and 29 U.S.C. §§ 1104, and 1132.

    (a) against Luciano Falzone, Robert Maresco, John Morello, Roland Bedwell, Alfonso Leto, Calogero Falzone, and Constantino Seminatore (hereinafter collectively the "Individual Defendants") in their official and individual capacities for conduct incompatible with and in breach of their contractual and fiduciary duties and obligations as officers and members under the constitution of the Laborers International Union of North America ("LIUNA") and of Local 1018 and to enforce the rights and obligations of the Local 1018 Trustee over the LOCAL UNION 1018 DEATH BENEFIT TRUST FUND (hereinafter "the Local 1018 Death Benefit Fund"), pursuant to the emergency trusteeship imposed by the Laborers International Union of North America ("LIUNA") on Local 1018,

    (b) against the Individual Defendants and against LUCIANO FALZONE as TRUSTEE of the Local 1018 Death Benefit Fund (hereinafter "Local 1018 Benefit Fund Trustee") for conduct incompatible with the fiduciary standards of Section 404(a)(1) the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1104 (a)(1)(A),

    (c) against the Individual Defendants and the Local 1018 Benefit Fund Trustee for conversion of the assets of Local 1018.

2. Jurisdiction of this Court is invoked under the following statutes:

    (a) Sec. 301 of the Taft-Hartley Act (29 U.S.C. § 185);

    (b) Sec. 502(a) 3 of the Employee Retirement Income Security Act of 1974 as amended (29 U.S.C. § 1132(a)(3)

    (c) 29 U.S.C. § 501;

    (d) 29 U.S.C. § 462, 464

    (e) 28 U.S.C. § 1331 (federal question);

    (f) 28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce);

    (g) 28 U.S.C. § 1367 (supplemental jurisdiction);

    (h) NY CLS Labor § 722.

3. Venue properly lies in this district under § 301 of the Taft-Hartley Act (29 U.S.C. § 185), Sec. 502(e) (2) of ERISA, 29 U.S.C. § 1132(e) (2) and under 28 U.S.C. §§ 1391 (b).

## PARTIES

4. Plaintiff Local 1018 is a subordinate local of LIUNA; and a labor organization within the meaning of § 301 of the Taft-Hartley Act (29 U.S.C. § 185) which represents employees in an industry affecting commerce as defined in § 501 of the Taft-Hartley Act (29 U.S.C. § 142). Local 1018 maintains its offices and is administered at 136-25 37th Avenue, Flushing, New York 11354.

5. Plaintiff Vincent Masino is the emergency Trustee of Local 1018, appointed by the General President of LIUNA by letter dated May 9, 2005.

6. Defendant Luciano Falzone was, until his resignation on May 6, 2005, a member of LIUNA and a member of the Executive Board of Local 1018. He currently serves simultaneously as the Local 1018 Benefit Fund Trustee and as the Business Manager of United Plant and Production Workers Local 175.

7. Defendant Robert Maresco was, until his resignation on May 6, 2005, a member of LIUNA and President and a member of the Executive Board of Local 1018.

8. Defendant John Morello was, until his resignation on May 6, 2005, a member of LIUNA, Recording Secretary, and a member of the Executive Board of Local 1018.

9. Defendant Roland Bedwell was, until his resignation on May 6, 2005, a member of LIUNA and a member of the Executive Board of Local 1018.

10. Defendant Alfonso Leto was, until his resignation on May 6, 2005, a member of LIUNA and Vice President and a member of the Executive Board of Local 1018.

11. Defendant Calogero Falzone was, until his resignation on May 6, 2005, a member of LIUNA and Secretary-Treasurer and a member of the Executive Board of Local 1018.

12. Defendant Constantino Seminatore was, until his resignation on May 6, 2005, a member of LIUNA and a member of the Executive Board of Local 1018.

13. At all times relevant to this action, Individual Defendants were officer and members of the Executive Board of Local 1018 and fiduciaries of Local 1018 within the meaning of 29 U.S.C. § 501 and New York State Labor Law § 722.

14. Upon information and belief, defendant Local 1018 Death Benefit Fund was established on or after January 1, 2005 through an Agreement and Declaration of Trust entered into between Falzone and Local 1018. The Local 1018 Death Benefit Fund maintains its offices and are administered at 136-25 37th Avenue, 4th Floor, Flushing, New York 11354.

15. Upon information and belief, the Local 1018 Death Benefit Fund is an employee benefit plan within the meaning of 29 U.S.C. § 1002(3)

16. Local 1018 is the plan sponsor of the Local 1018 Benefit Fund within the meaning of 29 U.S.C. 1002(16) (B) (ii).

17. Pursuant to the terms of the Trust Agreement, the Executive Board exercises the authority to elect the Fund Trustee and is a fiduciary within the meaning of 29 U.S. C.§ 1002(21) with respect to the exercise of the powers of appointment or election of the Local 1018 Benefit Fund Trustee.

18. Pursuant to the terms of the LIUNA Constitution, the Union Trustee exercises the authority of Local 1018 as a plan sponsor and the authority of the Executive Board under the Trust Agreement and is a fiduciary within the meaning of 29 U.S.C. § 1002(21) with respect to the exercise of the powers of appointment or election of the Local 1018 Benefit Fund Trustee.

## THE LIUNA CONSTITUTION

19. The LIUNA Constitution provides with respect to the imposition of a trusteeship, including an emergency trusteeship, as follows:

Article IX, Section 7. TRUSTEESHIP

When in the opinion of the General President, action is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such subordinate body or the International Union, or to protect the organization as an institution, the General President may file charges against any officer or member with the General Secretary-Treasurer for hearing before the General Executive Board, or appointment a temporary trustee or, in the General President's sole discretion, a supervisor to take charge and control of the affairs of such subordinate body; provided, however, that prior to the appointment of such trustee or supervisor the General President shall cause to be issued a notice setting a time and place for hearing for the purpose of determining whether such temporary trustee or supervisor

4

shall be appointed, but provided further, however, that where, in the judgment of the General President, an emergency situation exists within the subordinate body, a temporary trustee or supervisor may be appointed prior to such hearing, but such hearing shall then commence within 30 days and a decision made within 60 days after the appointment of such temporary trustee or supervisor; and further provided in all cases the subordinate body shall be advised of the reasons for the proposed or actual appointment of a trustee or supervisor, and that adequate notice of a hearing thereon at least 10 days prior to the date of the hearing shall be given to the subordinate body involved. During the period of trusteeship, all the officers and delegates of the subordinate body are relieved of their particular trust. In the case of supervision, one or more of the officers or delegates may be removed from office at the direction of the General President. The subordinate body and the officers and members thereof shall cooperate with the trustee or supervisor designated by the General President, in order that the purposes of the trusteeship or supervision may be accomplished as soon as possible. The trustee or supervisor shall be authorized to take full charge of the affairs of the subordinate body, to appoint temporary officers or employees at any time during the trusteeship or supervision, and to take action as, in the trustee's or supervisor's judgment, is necessary for the preservation of the subordinate body and its interests. The trustee or supervisor shall, from time to time, report on the affairs and transactions of the subordinate body to the General President. The General President may remove trustees or supervisors at any time and appoint successor trustees or supervisors.

The trustee or supervisor, temporary officers and persons employed to carry on the affairs of said subordinate body, during the period of trusteeship or supervision, shall give bond in such form and amount as may be necessary to indemnify against possible financial loss.

The trustee or supervisor shall take possession of all such funds, books, records, and papers of the Local Union or subordinate body and tender receipt for same. The trustee or supervisor shall pay all outstanding claims, properly proved, if funds are sufficient.

## THE LOCAL 1018 DEATH BENEFIT FUND AGREEMENT AND DECLARATION OF TRUST

20.     The Local Union Local 1018 Death Benefit Fund Trust Agreement provides with respect to the Appointment and Removal of Trustee and Acceptance of the Trust, as follows:

Article III, Section 1:

> The Trustee hereunder shall be a Trustee elected by the Union Executive Board. The Union Trustee may designate one alternate Union Trustee. Designation of an alternate Trustee is not mandatory but shall be left to the discretion of the Union

Trustee. Any such alternate so appointed, in the absence of the Regular Trustee, shall act in the place and stead of the absent Trustee with full power, authority and responsibility of such Trustee. Only the Union Trustee (or, if designated, the Alternate Union Trustee), shall have the power to vote at any meeting.

Article III, Section 2:

The Union Trustee, by virtue of his election by the Union as Trustee shall be deemed to accept the position as Trustee, and shall receive and hold the Fund as Trustee by virtue of this Agreement and Declaration of Trust for the uses, purposes and Trusts, with the powers and duties herein set forth and none other, by signing this Trust Agreement.

Article III, Section 3:

The Trustee and each successor elected Union Trustee shall continue to serve as such until his death, incapacity, resignation or removal as herein provided. The Trustee may resign and thereby be fully discharged from all further duty or responsibility hereunder by giving written notice pursuant to Section 5 of this Article.

Article IV, Section 4:

(a) The Union Trustee (or alternate Trustee if so designated) may only be removed from office by a majority vote of the Local 1018 membership.

(b) In case the Trustee shall die, become incapable of acting hereunder, or resign, a successor Trustee shall be selected by the Union Executive Board.

21. The Trust Agreement provides for the immediate distribution of the assets of the Trust Fund upon the imposition of a Trusteeship upon Local 1018 by LIUNA as follows:

In the event of a Trusteeship, involuntary merger, or consolidation, the Trustee or Alternate Trustee shall immediately distribute all the assets to all eligible participants prior to their death.

## FACTUAL BACKGROUND

22. Local 1018, LIUNA, was chartered by the LIUNA and represents construction workers engaged in road construction work in New York City.

6

23. Pursuant to Article IX Sec. 6 of the LIUNA Constitution, the General President is empowered to conduct an investigation into the affairs of subordinate bodies, their officers and members and to examine the books and records of the subordinate body.

24. Upon information and belief, commencing prior to May, 2004, the Executive Board of Local 1018 was under investigation by the General Executive Board Attorney of LIUNA pursuant to the authority delegated to the GEB Attorney by the LIUNA Constitution.

25. Upon information and belief, on or about May 6, 2004, the Executive Board of Local 1018, comprised of the Individual Defendants voted to allocate $100,000 of union assets to resist the imposition of a trusteeship upon Local 1018.

26. On or about June 3, 2004 the Executive Board authorized the establishment of a Life Insurance Death Benefit Trust and appointed Luciano Falzone as Local 1018 Death Benefit Fund Trustee.

27. Upon information and belief, the Executive Board told the members that a Life Insurance Death Benefit Trust was being created and the members voted to approve such creation.

28. Upon information and belief, the Individual Defendants and/or the Local 1018 Death Benefit Fund Trustee approved the provisions of the Trust Agreement providing that a) except for death, incapacity or resignation, the only mechanism for removal of the Death Benefit Fund Trustee is by a majority vote of the Local 1018 membership and b) upon imposition of a trusteeship upon Local 1018 the assets of the Local 1018 Death Benefit Fund shall be distributed to "all eligible participants" of the Local 1018 Death Benefit Fund in advance of their death.

29. Upon information and belief on April 7, 2005, the Death Benefit Fund Trustee recommended to the membership of Local 1018 that in the event of imposition of a trusteeship upon Local 1018 that: a) the Death Benefit Trust moneys be distributed in accordance with the Trust Documents; b) to avoid the trusteeship that the Executive Board and the membership of Local 1018 resign and join another union.

30. Upon information and belief, the Death Benefit Fund Trust contained no assets until April 28, 2005 when the Executive Board of Local 1018 caused the transfer of over $300,000 of Local 1018 assets to be deposited in an account in the Amalgamated Bank in the name of "Local Union 1018 Death Benefit Trust."

31. As of March 31, 2005, Local 1018 had a combined balance of $362,694.78 in checking account number 690-9090715 and in mutual fund account number 743016689583 at the Bank of New York.

32. On April 28, 2005, Local 1018 transferred $300,000.00 from the Bank of New York accounts to a restricted account held by the Local 1018 Death Benefit Fund.

33. As of April 30, 2005, Local 1018 had $48,460.63 in checking account number 690-9090715 at the Bank of New York and $434.36 in mutual fund account number 743016689583 at the Bank of New York.

34. On May 9, 2005, Local 1018 transferred $18,000.00 from checking account number 690-9090715 to a restricted account held by the Local 1018 Death Benefit Fund, virtually wiping out the assets of Local 1018.

35. Upon information and belief on or about May 2, 2005, Defendant Falzone gave notice to the National Labor Relations Board that Local 1018 disclaimed any interest in representing the employees in the bargaining units previously represented by Local 1018 and has since failed and refused to enforce the collective bargaining agreements between Local 1018 and various employers. He also advised the NLRB that as Business Manager of Local 1018 he ceded the bargaining rights of Local 1018 to the union called United Plant and Production Workers Local 175.

36. By letter dated May 6, 2005 the Individual Defendants sent notice to the General President of LIUNA that they had resigned en masse from LIUNA.

37. By letter dated May 9, 2005 to the membership of Local 1018 and referenced "Former Local Union 1018," Defendant Falzone identified himself as the Business Manager of United Plant and Production Workers Local 175 and advised the membership of Local 1018 that their union had had merged with Local Union No. 175.

38. Upon information and belief the members of Local 1018 have never participated in any vote by secret ballot to merge Local 1018 with Local 175.

39. Effective May 9, 2005, the General President of LIUNA imposed an emergency trusteeship on Local 1018 and appointed Vincent Masino as Emergency Trustee. By letter dated May 9, 2005 notice was given to Local 1018 and its members of the emergency trusteeship and that a hearing would be held pursuant to the LIUNA Constitution. The stated reasons for the emergency trusteeship as set forth in the notice are: a) that the resignation of the members of the Executive

Board had left a void in the leadership of Local 1018 so that the Local 1018 was unable to function; and b) the former officers had violated their obligations and surrendered the Local's bargaining rights so that the Local 1018 was unable to enforce its collective bargaining agreements. Notice of a hearing on the appointment of the Trustee to take place on June 2, 2005 has seen been sent to members and former officers of Local 1018.

40. On May 10, 2005, representatives of the Trustee contacted the Bank of New York to have a hold placed upon all of the bank accounts of Local 1018.

41. On May 11, 2005, the Bank of New York agreed to transfer to the Trustee's control a Local 1018 bank account, which contained as of that date approximately $13,500.00. In addition, the records provided by the Bank of New York indicated that the Individual Defendants had transferred the aforementioned $318,000.00 to a restricted account held by the Local 1018 Death Benefit Fund during the three weeks prior to the resignations of the Individual Defendants.

42. After the transfer of the $318,000, Local 1018 was left with less than $30,000 on which former officers of Local 1018 had previously written checks, so that by their actions the Individual Defendants left Local 1018 with approximately $10,000 in assets.

43. By letters dated and sent via Express Mail on May 11, 2005, the Local 1018 Trustee advised each of the Individual Defendants that Individual Defendants had failed to turn over the property of Local 1018 as required pursuant to LIUNA's Constitutions and Uniform Local Constitution and directed that said property and assets of Local 1018 be turned over to the Local 1018 Trustee or his designated representative on May 13, 2005, between the hours of 8:30 a.m. and 12:00.

44. Pursuant to Article IX, Sec.7 of the LIUNA Constitution, during the period of trusteeship, all the officers and delegates of Local 1018 are relieved of their positions and are required to cooperate with the Union Trustee, who is granted the authority to take such action as he or she deems necessary for the preservation of the subordinate body and its interests.

45. Pursuant to the LIUNA Constitution, the Union Trustee exercises all of the powers of the Executive Board of Local 1018 including the power to appoint the Death Benefit Fund Trustee.

46. Plaintiffs have filed a related action before this Honorable Court, 05 Civ. 2336 (ERK), in part to enforce the emergency trusteeship imposed by LIUNA on Local 1018.

47.   Article XVIII, Section 6, of the LIUNA Constitution provides as follows:

If a local union is suspended, dissolved, or ceases to exist, all of its property, funds, books, papers, and paraphernalia shall immediately revert to and become the property of the International Union and the General President may forthwith, either personally or by deputy, take possession thereof for the International Union. Alternatively, in the General President's sole discretion, the International Union may refrain from taking all of the former Local Union's property, funds, books, papers, or paraphernalia.

The officers and members of said Local Union shall be severally and jointly responsible for such property, funds, books, papers and paraphernalia until the same are turned over to the General President or authorized representative.

48.   Upon information and belief, the Individual Defendants created the Death Benefit Trust and entered into the Death Benefit Trust Agreement as a subterfuge to defeat the constitutional authority of the Union Trustee over the assets of Local 1018 and to maintain control of the assets of Local 1018 for their own personal benefit and the benefit of third parties.

49.   Upon information and belief the Individual Defendants entered into the Trust Agreement in order to prevent the Union Trustee from recovering the assets of Local 1018.

50.   Upon information and belief the Individual Defendants established the Death Benefit Fund and entered into the Trust Agreement in order to prevent the Union Trustee as plan sponsor from exercising meaningful control over the conduct of the Benefit Fund Trustee and authorized removal provisions that fail to ensure that a) there is an effective mechanism to permit meaningful oversight of the conduct of the Fund Trustee and b) make the Fund Trustee subject to termination on reasonably short notice to ensure that he carries out his fiduciary duties.

51.   Upon information and belief, the Individual Defendants caused $318,000.00 of Local 1018 assets to be transferred into the Death Benefit Fund for the sole and express purpose of defeating the constitutional authority of the Union Trustee over the assets of Local 1018.

52.   Defendants have failed to turn over control over all accounts and moneys held by the Local 1018 Death Benefit Fund, despite the Local 1018 Trustee's request that all property of Local 1018 be turned over to the Local 1018 Trustee or his designated representative.

53.   On May 18, 2005, former Local 1018 counsel Riccardo Iaccarino advised counsel for the Union Trustee Bruce Listhaus that albeit he was not technically retained by the Benefit Fund Trustee he could speak for the Benefit Fund Trustee with respect to the Death Benefit Trust Fund

matters. Iaccarino was advised by Union Trustee Counsel that the Union Trustee was a) directing the Benefit Fund Trustee not to distribute or transfer any of the assets of the Death Benefit Fund and b) requesting the resignation of the Death Benefit Fund Trustee to enable the Union Trustee to appoint his replacement. Iaccarino represented that Fund Trustee would agree not to distribute any assets from the Death Benefit Trust but that the Fund Trustee refused to resign from his position as Fund Trustee.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (FOR BREACH OF DEFENDANTS' CONTRACTUAL OBLIGATIONS)

54. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 53 of this Complaint, as if fully set forth herein.

55. Pursuant to 29 U.S.C. § 462 and in accordance with the procedural requirements of its constitution, LIUNA has properly and in good faith established an emergency trusteeship over Local 1018 for the purposes of assuring the performance of collective bargaining agreements and other duties of Local 1018 and otherwise carrying out its legitimate objects as a labor organization.

56. In refusing the request of the Trustee that he resign as Death Benefit Fund Trustee the Death Benefit Fund Trustee is in breach of his obligations under the LIUNA Constitution to cooperate with the Union Trustee.

57. By providing in the Trust Agreement that the Union Trustee may not exercise his authority over the Local 1018 Death Benefit Fund, including to effect the removal of a Death Benefit Fund Trustee who is no longer an officer of Local 1018 or a member of LIUNA, Individual Defendants repudiated their constitutional obligations and the Trust Agreement to the extent it restricts the authority of the Union Trustee is void and unenforceable.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (FOR BREACH OF DEFENDANTS' FIDUCIARY DUTY UNDER FEDERAL LAW)

58. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 57 of this Complaint, as if fully set forth herein.

59. Upon information and belief, Individual Defendants and each of them have violated their fiduciary obligations to Local 1018 under 29 U.S.C § 501 in failing to hold the money and

property of Local 1018 for the benefit of Local 1018 and its members and in using the assets of Local 1018 for their personal benefit.

60. The Individual Defendants are personally accountable to Local 1018 and the Union Trustee for the money transferred to Death Benefit Fund.

### AS AND FOR A THIRD CLAIM FOR RELIEF
### (FOR BREACH OF INDIVIDUAL DEFENDANTS' FIDUCIARY DUTY UNDER STATE LAW )

61. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 60 of this Complaint, as if fully set forth herein.

62. Upon information and belief, Individual Defendants and each of them have violated their fiduciary obligations to Local 1018 under New York State Labor Law § 722 (a), (b) and (c) failing to hold the money and property of Local 1018 for the benefit of Local 1018 and its members and in and in using the assets of Local 1018 for their personal benefit.

63. The Individual Defendants are personally accountable to Local 1018 and the Union Trustee for the money transferred to Death Benefit Fund.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
### (FOR BREACH OF INDIVIDUAL DEFENDANT'S FIDUCIARY DUTY UNDER ERISA

64. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 63.

65. The Trust Agreement provides that the Executive Board has the power to appoint the initial and successor trustees.

66. As plan sponsor, pursuant to the terms of the Declaration of Trust, the Executive Board of Local 1018 had fiduciary responsibility under Section 404 (a) (1) (A) and (B) of ERISA, 29 U.S.C. § 1104 (a) (1) (A) and (B) with respect to the selection and accountability of the Fund Trustee.

67. Under the LIUNA Constitution, the Union Trustee has all of the authority and responsibility of the Executive Board, and is therefore a fiduciary under ERISA to the same degree.

68. In providing that removal of the Fund Trustee may be effected only by vote of the members of Local 1018, the Declaration of Trust fails to provide an effective mechanism for accountability of the Union Trustee and fails to provide for his termination on reasonably short notice.

69. Under the circumstances, the provisions of the Trust Agreement prevent the Death Benefit Fund Trustee from effectively being held accountable and prevent his short term removal. They are incompatible with the fiduciary requirements imposed by 29 U.S.C. § 1104 that the conduct of fiduciaries be subject to oversight and subject to termination on short notice to ensure that they carry out their fiduciary duties.

70. The Fund Trustee and the Individual Defendants established the Declaration of Trust in order to use the Fund as a weapon to effect the demise of Local 1018 and have failed to act in the interests of the participants and beneficiaries of the Fund.

71. Under the circumstances, the provisions of the Trust Agreement limiting the power of removal to an election by the members of Local 1018 are incompatible with the fiduciary obligations imposed by ERISA and are unenforceable.

72. The Court may reform the Trust Agreement to render the exclusive removal provision unenforceable and permit the Trustee to exercise authority as plan sponsor to obtain the resignation of the Death Benefit Fund Trustee and appoint a successor.

WHEREFORE, Plaintiffs seek an order granting the following relief:

a) enjoining the Fund Trustee from making any distribution or transfer of assets to or from the Death Benefit Fund.

b) directing the Benefit Fund Trustee to:

i) recognize the validity of the trusteeship and cooperate with the Local 1018 Trustee;

ii) provide an accounting of the assets of the Trust Fund to the Union Trustee; and

iii) tender his resignation as Death Benefit Fund Trustee to the Union Trustee; and

c) declaring the Agreement of Trust to be unenforceable to the extent that it limits removal of the Death Benefit Fund Trustee to an election by members and finding that the Union Trustee as Plan Sponsor has the authority to remove the Death Benefit Fund Trustee and to appoint a successor Trustee.

d)     holding the individual defendants liable for any losses incurred by Local 1018 as a result of the transfer of $318,000 from Local 1018 to the Death Benefit Trust Fund.

e)     for such other and further relief as the Court deems just and proper.

Dated:     New York, New York
               June 2, 2005

                                                 GORLICK, KRAVITZ & LISTHAUS, P.C.
                                                 Attorneys for Plaintiffs

                                                 By: _____
                                                    Barbara S. Mehlsack, Esq.
                                                    BM 1390
                                       17 State Street, 4th Floor
                                       New York, New York 10004
                                       (212) 269-2500
                                       bmehlsack@gkllaw.com